**Application of John G. MENG and Gerald J. Driessen.**

**Patent Appeal No. 9169.**

United States Court of Customs and Patent Appeals.

March 7, 1974.

Herman J. Gordon, William S. Feiler, Chicago, Ill. (Dressler, Goldsmith, Clement & Gordon, Chicago, Ill.), attorneys of record, for appellants.

Joseph F. Nakamura, Washington, D. C., for the Commissioner of Patents. Fred Sherling, Washington, D. C., of counsel.

Before MARKEY, Chief Judge, and RICH, BALDWIN, LANE and MILLER, Judges.

MARKEY, Chief Judge.

This is an appeal from the decision of the Board of Appeals, affirming the rejection under 35 U.S.C. § 103 of claims 1 to 9 of appellants' application serial No. 81,687, filed October 19, 1970, for "Package with Staggered Product Slices and Process and Apparatus for Producing the Same." We reverse.

## The Invention

The invention relates to a package containing a stack of individual product slices formed of a flexible material, such as processed cheese, wherein the lateral edges of adjacent slices are offset relative to one another to provide "gripping portions having a dimension that is sufficient to facilitate manual separation of the slices but insufficient to allow the gripping portions to sag out of the plane of the major portion of the slice." The lateral edges of alternating slices remain aligned with one another to provide parallel surfaces at the sides of the stack. Figure 5 of the specification illustrates the package:

Independent claim 1 is directed to the package in general with claims 2 to 4 specifying the amount of offset at "less than ⁵⁄₁₆ inch," "greater than ⅛ inch" and "between ⅛ inch and ⁵⁄₁₆ inch," respectively.

Claims 5 to 8 are drawn to the process of producing the claimed package from

1. U.S. 3,092,501, filed May 4, 1959, issued June 4, 1963.

product ribbons interleaved to create the offset relationship and then severed into individual stacks. Claim 9 claims the package as a product of the process of claim 6.

## The Decision Below

Beck et al. (Beck)[1] is directed to a novel method of packaging food products, such as cheese slices, which results in a package containing several food-filled pouches. No description is given of any relationship of the individual product slices. The following illustration of the pouches is found in Figure 10 of the patent:

Palmer[2] discloses the acknowledged prior art method of producing processed cheese which entails the formation of ribbons of the cheese, stacking the ribbons, and severing the same into individual blocks of cheese slices with all of their edges completely aligned.

The examiner rejected claim 1 under 35 U.S.C. § 102 as anticipated by the upper portion of the package shown in Figure 10 of Beck. Claims 2 to 4 were deemed unpatentable under 35 U.S.C. § 103 as obvious choices for the amount of offset for the slices in the Beck pouch. Claim 1 was also rejected under 35 U.S.C. § 103, as were claims 5 to 9, as unpatentable over Beck in view of Palmer.

The board refused to sustain the § 102 rejection because Beck does not state and the Beck drawings "do not make it clear" that all the slices in his pouches were of the same external dimensions, whereas claim 1 specifically requires that the slices have "substantially the same external dimensions."

2. U.S. 2,907,109 filed February 13, 1956, issued October 6, 1959.

The § 103 rejections covering the package claims were sustained however, on the following reasoning:

> The package illustrated in Figure 10 of Beck et al., in our opinion, renders, at least, obvious the package defined by claims 1 through 4 and 9. One being aware of the problem of separation of individual slices of a material from a stack of such slices, viewing the Beck et al. package would readily recognize that the offset illustrated would provide a means for separating the individual slices. However, whether one would recognize the solution to the aforementioned problem is not here controlling since the package defined by the claims is illustrated by Figure 10.
>
> \*   \*   \*   \*   \*   \*
>
> Nor do the claims patentably distinguish on the basis of the amount of offset. The offset illustrated in Figure 10, appears to be of a dimension in which the edges do not sag, since no sag is illustrated. Moreover, the determination of an appropriate amount of offset for the particular material being packaged in order to prevent sag and to facilitate gripping, in our opinion, would not be unobvious to the packager.

The total absence from the Beck text of any reference to any offset of the slices was dismissed in these words:

> The drawings clearly disclose the offset relationship of the individual slices, and are, therefore, available as a reference for that purpose. \*   \*   \*

Appellants had submitted two affidavits. The Bush affidavit was not mentioned by the board. The affidavit of Beck, co-inventor of the Beck reference, to the effect that the concept of offset slices was entirely novel to him and had not been contemplated in his patent, was found unpersuasive, the board saying, "What a patentee may have intended or may have seen cannot negate what is conveyed by his patent disclosure."

The rejection of process claims 5 to 8 was similarly sustained, "[t]he modification of Palmer to produce the Beck et al. package" being considered "obvious to a worker of merely ordinary skill in this art."

## OPINION

■ The problem solved by appellants may be stated, "How can packaged slices be more rapidly and easily separated, without damaging the slices, in fast food restaurants and like institutions?" Prior to the first office action, appellants called attention to sixteen prior patents, among them the Beck and Palmer patents relied upon in the rejections before us. The issue to be decided is, "would one of ordinary skill in the art, presented with that problem and those sixteen prior patents—and totally unaware of appellants' solution—be led to do what appellants did?" We think not.

■ We arrive at our conclusion against the background of the scope and content of the prior art, the differences between the claims and that art, and the level of ordinary skill in that art.[3] Graham v. John Deere Co., 383 U.S. 1, 86 S.Ct. 684, 15 L.Ed.2d 545 (1966).

The fundamental error below lay in an over-evaluation of the scope and content of the prior art. That made the claimed differences appear inconsequential and

3. Appellants' brief is replete with references to commercial success, filling of a long felt but unresolved need, failures of others and copying by two named competitors. Under § 103, evidence of what occurred after the invention may have a probative value equal to or greater than evidence of what went before. Though indicated as "secondary" considerations in *Graham*, such factors are second only in time. We are not, however, favored in this case with any *evidence* of commercial success, long felt need or failures of others. Appellants' evidence of "copying" appears in their petition to make special filed two months after their application was filed. The petition states that a cheese package marketed by one competitor (not two) two months prior to appellants' application date, but after their reduction to practice, would infringe the claims of their application. The petition, and the record (except for equivocal inferences in the affidavits) are silent as to when, if ever, appellants' invention was placed on the market. In reaching our decision, therefore, we ignore, as did the board, all of the foregoing post-invention considerations.

caused the level-of-skill evidence to be given insufficient weight.

■■ We read, as we must, the primary reference to Beck without the benefit of appellants' teachings. Beck is devoted solely to packaging by the use of envelopes and associated dividers. It has nothing whatever to do with separating food slices. In one part of one figure, Figure 10, it shows slices with alternately offset edges. Only that portion of one figure is alleged by the examiner and the board to render appellants' invention obvious. In the other half of the *same* figure, the edges of the slices are shown as randomly offset, some extending beyond both edges of the adjacent slice. Appellants say that was a positive showing of slices having nonidentical external dimensions. We agree. Figure 7, a partial longitudinal view, and Figure 10, a lateral cross-section, show offsets at both the lateral and longitudinal edges of the slices. Figure 6 shows the cheese to be Swiss, which, appellants and affiant Beck say, is cut from a block or wheel in slices of varying external dimensions and thereafter individually stacked.

The erroneous evaluation of the prior art herein is illustrated by the statement of the examiner's opinion (after saying that the Beck affidavit could not overcome the Beck reference):

    * * * *Most* individuals, upon observing carefully the cheese stack shown in the upper portion of Fig. 10 of Beck et al, would conclude that the slices were offset in order to facilitate manual separation of slices, as the Examiner believes the honorable Board will appreciate. * * * (Emphasis the examiner's)

The board stated the same view, as set forth in the quotation from the board's opinion, *supra.*

■ But "whether one would recognize the solution to the aforementioned problem" *is* controlling. It begs the question to say that the claimed package is "illustrated by Fig. 10." A claimed invention is "illustrated," in the sense of 35 U.S.C. § 103, by a drawing which, in-dependently of an applicant's disclosure, would lead those skilled in the art to recognize the claimed invention as the solution to the problem it solved, i.e., by a drawing which renders the invention "obvious."

In our view, the claimed package is not illustrated in Figure 10. We find no warrant for the assumption that one lacking knowledge of appellants' teachings would be sure to disregard the lower half of Figure 10, the relationship of Figures 7 and 10, the illustration of Swiss cheese in Figure 6 and the entire text of the Beck reference, to focus inexorably on just the top *half* of Figure 10. If, somehow, that focusing did occur, we cannot believe that the extremely limited offset shown would teach or suggest the "gripping portion" of the product claims, or the problem of separating slices, or the solution thereof contributed by appellants. We note, in passing, that the upper half of Figure 10 did not make the claimed invention obvious to the reference inventor Beck, or to his food-packing assignee, Armour & Co., or, apparently, to anyone else during the seven years that the reference was extant before appellants' filing date. If a viewer of Beck were to "zero in" on just the upper half of Figure 10, it required appellants, not Beck, to direct the viewer's sight.

■■ We are aware, of course, that a claimed invention may be anticipated or rendered obvious by a drawing in a reference, whether the drawing disclosure be accidental or intentional. In re Seid, 161 F.2d 229, 34 CCPA 1039, (1947). But, as the solicitor correctly states, a drawing is available as a reference *for all that it teaches* a person of ordinary skill in the art. The drawing here, Figure 10 of Beck, simply would not, in our view, teach or suggest the claimed invention to those who had never seen appellants' disclosure. Although our view would remain unchanged if Figure 10 were comprised of only its upper half, the fact that its lower half admittedly does not suggest the invention strengthens that view. We are further stayed from a holding of obviousness

when, as here, the drawing occurs in a reference in no way directed toward the problem involved, and the drawing must be viewed in a teaching vacuum so far as the invention before us is concerned.

As we said in In re Shuman, 361 F.2d 1008, 1012, 53 CCPA 1251, 1255 (1966), references must be evaluated by ascertaining the facts fairly disclosed therein as a whole. So evaluated, the Beck reference does not render the product claims before us obvious.

■ Because so much was read into the upper half of Beck's Figure 10, it was an easy step to find the identical slice dimensions and the "gripping portions," as well as the specific offset dimensions, i.e., the "differences between the prior art and the claims," to be obvious. In view of our evaluation of Beck, we consider these differences as specific limitations which render the claims unobvious. Of course the invention seems simple, after the fact. But simplicity, particularly in an old and crowded art, may argue for rather than against patentability. In re Sporck, 301 F.2d 686, 49 CCPA 1039 (1962). Progress in the crowded arts, usually made in small increments, is as important as it is in arts at the pioneer stage. In re Hummer, 241 F.2d 742, 44 CCPA 814 (1957). The Constitution envisages and seeks progress in the "useful arts," not just in those more esoteric or scientific.

Similarly, having decided that the scope of the art represented by the upper half of Beck's Figure 10 rendered the product claims obvious, the examiner and the board disposed quickly of the evidence touching on the level of skill in the art.

The affidavit of Bush, who was clearly skilled in the art and experienced in cheese packaging for over twenty-one years, went unmentioned by the examiner and the board. Yet it establishes that Bush's employer, appellants' assignee, had openly packaged cheese in a "shingle" package, with each slice offset from the next, for at least four years prior to appellants' filing date without suggesting the claimed invention to Bush, or to anyone he knew of; that he knew the edges of the "shingle" packages sagged and believed in retrospect that such knowledge deterred those skilled in the art from the claimed invention; that he believed the Beck reference did not suggest the invention and that the cheese slices therein were clearly of different sizes, as shown in an exhibit attached to his affidavit; that none of the packages of Beck's assignee, Armour & Co., contained staggered slices.

The affidavit of Beck evidences that his experience in the dairy industry, mostly in cheese packaging, encompassed over thirty years; that he had supervised all packaging plants for a large dairy cooperative; that he was familiar with many different approaches proposed and used to package cheese slices; that he was fully familiar with the Beck reference and supervised the manufacturing of the reference package wherein slices were cut from blocks of *natural* cheese and *individually* stacked; that he was familiar with the claimed invention and the commercial package embodying the invention; that in all his years in the industry he had never seen a package with the slices arranged in the manner of the invention; that the concept of the invention was excellent; that after studying it he was *surprised* that it had not been thought of in the past, because the package was so useful, commercially appealing and unique.

The board dispensed with the Beck affidavit in the single sentence concerning what the patentee saw or intended, which is quoted above. That sentence rests on the presumption that the Beck disclosure "conveyed" the claimed invention. If that presumption were accurate, the board's statement would be correct. But the Beck affidavit was more than merely "[w]hat a patentee may have intended or may have seen." It was, like the apparently ignored affidavit of Bush, a statement under oath by one skilled in the art over many years. Both affidavits constituted evidence of the level of skill in the art. Both were evidence that those skilled in the art

when the invention was made, and for many years before, did not find the invention obvious, even though one affiant had been thoroughly and totally familiar with Figure 10 of the Beck reference for eleven years prior to appellants' filing date, during all of which years he was busily packaging cheese slices.

 The summary treatment of the Bush and Beck affidavits was error. See In re Bulina, 362 F.2d 555, 53 CCPA 1275 (1966); In re McKenna, 203 F.2d 717, 40 CCPA 937 (1953). Reference to the subjective reaction of a person who was familiar with and practiced the art at the time the invention was made is the usual way of determining the level of ordinary skill in the art. Malsbary Mfg. Co. v. Ald, Inc., 447 F. 2d 809 (7th Cir. 1971).

For the reasons indicated it was error to reject the product claims 1–4 and 9 as obvious in view of Beck.

Regarding process claims 5–8, the board affirmed the rejection under 103 on Beck and Palmer, saying "Except for the claimed offset, the process is the conventional packaging process illustrated by Palmer." We do not understand appellants as disputing that statement. Nor do we. It is, however, precisely the claimed offsetting step that is not disclosed or suggested by either Beck or Palmer. It is precisely this "difference" over the prior art which makes the invention as a whole nonobvious and the claims patentable. What we have said above respecting the basis for the rejection of the product claims applies in good part to the rejection of the process claims.

The scope and content of the prior art did not disclose or suggest the inventions claimed herein; the differences in the claims over what was conveyed by the prior art were such as to support patentability; the level of skill in the art was such as not to have led to the claimed inventions as obvious advances to be expected in the growth of the art. Accordingly, the decision of the board must be *reversed*.

Reversed.