**GOULD–NATIONAL BATTERIES, INC., a Corporation of Delaware, and Bureau Technique Gautrat, S.A.R.L., a Society of the Republic of France, Appellants in No. 15195,**

v.

**GULTON INDUSTRIES, INC., a Corporation of New Jersey, Appellant in No. 15196.**

**Nos. 15195, 15196.**

United States Court of Appeals Third Circuit.

Argued June 10, 1965.

Decided June 17, 1966.

Kalodner, Circuit Judge, dissented.

Richard Russell Wolfe, Chicago, Ill., (Pitney, Hardin & Kipp, Newark, N. J., Wolfe, Hubbard, Voit & Osann, Chicago, Ill., Leroy W. Mitchell, Phillip H. Mayer, Chicago, Ill., on the brief), for plaintiffs (appellants in No. 15,195).

Francis T. Carr, New York City (Saul J. Zucker, Kristeller, Zucker, Lowenstein & Cohen, Newark, N. J., Ralph L. Chappell, Kenneth E. Madsen, Kenyon & Kenyon, New York City on the brief), for defendant (appellant in No. 15,196).

Before KALODNER, HASTIE and SMITH, Circuit Judges.

WILLIAM F. SMITH, Circuit Judge.

These appeals are from a judgment entered in an action for the infringement of two patents, No. 2,571,927 and No. 2,-636,058, each of which covers several variants of an electrolytic cell commonly used in sealed storage batteries of the secondary type. The court below held claims 1, 3 and 4 of '927, and claims 2, 5, 6 and 9 of '058, invalid. 231 F.Supp. 609. This holding will be affirmed. The only remaining question is whether the court erred in its determination that claim 2 of '927 was valid and infringed.

We find it necessary to consider only the issue of validity.

The patent in suit is one of many in a crowded art in which electrolytic cells of the secondary type were well known. They comprised: (a) a fluid-tight container usually equipped with means to minimize internal pressures created by the evolvement of gases during overcharge; (b) an immobilized electrolyte which, in alkaline batteries, was a solution of potassium hydroxide; (c) positive and negative electrodes (anode and cathode) suitably spaced and immersed in the electrolyte; and (d) a separator made of a porous nonconductive material such as asbestos, nylon, etc., disposed between the anode and cathode. The separator served a dual purpose; it immobilized the electrolyte and insulated the electrodes.

Since claim 2, which was held valid, incorporated by reference claim 1, which was held invalid, they should be viewed jointly. Claim 1 reads as follows:

"An electrolytic cell of the type described comprising a sealed vessel capable of confining under pressure the gasses generated therein, and in said vessel a negative electrode, a positive electrode, and immobilized liquid electrolyte between limited areas of the surface of one electrode and the surface of the other electrode, free gas passages through electrolyte-free gas spaces between other areas of opposite surfaces of said electrodes, and a film of the electrolyte on said latter areas, said latter film-covered areas on either electrode causing thereon the polarization and recombination of a substantial amount of the gas developed at the electrode of the opposite polarity."

The basic components of the invention as thus defined are the same as those embodied in the structure of the prior art, with one exception: the separators are perforated. We find this feature of little significance.

The invention of claim 2 differs from that of claim 1 in only one respect. Therein "the amount of active material in the negative electrode is in substantial

excess of the equivalent amount of active material in the positive electrode." According to the specifications of the patent, the excess of active material in the negative electrode serves as a means of suppressing the evolvement of hydrogen gas, thus minimizing internal pressures. The principle on which such an electrode functions is fully explained in the lower court's opinion at pages 615–616. We see no reason to repeat that explanation.

The feature on which the claim to patentability rests is the negative electrode described above which the plaintiff terms the "hydrogen suppression structure." The court below correctly found that the structure was old and well known in the art but incorrectly found that "[N]ot before the present patent had the negative active material in the cathode been used for the purpose of suppressing hydrogen during overcharge." The patent to Rublee, No. 2,269,040, issued in 1942, covers a sealed storage battery comprised of electrolytic cells of the type defined by the claim in issue. The court below held that the reference was not anticipatory and apparently disregarded it as of no significance. We believe this was error.

The structural elements of the Rublee invention, including a negative electrode having an excess of active material, are the same as those of the invention of claim 2. It clearly appears from his specifications that he recognized that the excessive charging of a battery of the secondary type liberated hydrogen "at the negative electrode," creating internal pressure. As a solution to the problem he recommended, as do the patentees of '927, the use of a negative electrode having an excess of active material. The negative electrode of Rublee differs from that of the claim in issue only in its chemical composition; differences are also to be found in the composition of the positive electrode and the electrolyte. Viewed against the background of the prior art, these differences are of no importance. The prior art discloses a wide range of metallic substances suitable for use as electrodes and, similarly, a wide range of acid and alkaline salts suitable for use as electrolytes.

■ There can be no doubt that an electrolytic cell manufactured according to the teachings of Rublee, if later than the patent in suit, would infringe and the charge of infringement could not be averted by the utilization of separators lacking perforations. It is an established axiom of the patent law that a device or method which would infringe if later than the disputed patent, anticipates if earlier. Chemical Construction Corp. v. Jones & Laughlin Steel Corp., 311 F.2d 367, 373 (3rd Cir. 1962) and the cases therein cited. This axiom is applicable in the instant case.

Another reference which is pertinent although not anticipatory is the British patent to Herold, No. 317–310 (1929). This patent discloses a negative electrode similar to that defined in the claim in issue but recommends its use as an expedient to solve the problem of over-discharge. This patent covers a nickel-cadmium cell, similar to that of the claim in issue, in which a solution of potassium hydroxide is used as the electrolyte.

■ Even if it is assumed that the patentees were the first to discover the utility of the negative electrode as a "hydrogen suppression structure," the claim to patentable invention cannot be sustained. General Radio Company v. Superior Electric Company, 321 F.2d 857, 862 (3rd Cir. 1963) and the cases therein cited; cert. den. 376 U.S. 938, 84 S.Ct. 793, 11 L.Ed.2d 659. Where, as here, the allegedly novel feature of the invention is a structural element substantially similar to one old and well known in the art, the claim to patentability may not rest on the discovery of a new use to which such an element was readily accommodable by reason of its intrinsic properties. Ibid. That those who preceded the patentees failed to perceive all the uses to which the negative electrode described was accommodable does not minimize the effect of their disclosures or enhance the claim to patentability. General Electric Co. v. Jewel Incandescent Lamp Co., 326 U.S. 242, 66 S.Ct. 81, 90 L.Ed. 43 (1945).

Another feature upon which the claim to patentability rests is the "film of * * * electrolyte" on areas of both electrodes which, according to the claim, causes "polarization and recombination of a substantial amount of the gas developed at the electrode of the opposite polarity." The court below correctly found that "the use of an electrolytic film on the electrodes was not in itself new." See the patent to Lange, et al., No. 2,131,-592 (1938). We should add two observations: first, polarization is a phenomenon of the electrolytic reaction which occurs in a storage battery of a secondary type; second, the recombination of gases is a phenomenon of the chemical reaction which occurs at the electrodes of opposite polarity. These phenomena were recognized in the art long prior to the advent of the patent in suit. It is obvious that the "film of electrolyte" performs the same function in the cell of the patent in suit as it did in similar structures of the prior art.

█ The issue of anticipation aside, the more critical question is whether the invention of claim 2 meets the conditions prescribed by §§ 101 and 103 of Title 35 U.S.C.A. An invention which meets the requirements prescribed by § 102 but fails to meet those of §§ 101 and 103, is not patentable. Graham v. John Deere Co., 383 U.S. 1, 86 S.Ct. 684, 15 L.Ed.2d 545 (1966). The latter section reads in pertinent part as follows:

"A patent, may not be obtained though the *invention is not identically disclosed* or described as set forth in section 102 of this title, *if the differences between the subject matter as a whole would have been obvious* at the time the invention was made to a person having ordinary skill in the art to which said subject matter pertains." (Emphasis supplied.)

Under this section "the scope and content of the prior art are to be determined; differences between the prior art and the claims at issue are to be ascertained; and the level of ordinary skill in the pertinent art resolved. Against this background, the obviousness or nonobvious-ness of the subject matter is determined." Graham v. John Deere Co., supra at page 17, 86 S.Ct. at page 694.

█ The claim covers an electrolytic cell comprised of an aggregation of elements which the court below found were old and well known in the art. After Rublee's disclosure, more than nine years prior to the issuance of '927, that the elimination of hydrogen gas could be controlled by the utilization of a negative electrode having an excess of active material, it would have been obvious to a person reasonably skilled in the art that the employment of such a structure in an electrolytic cell would overcome the problem of internal pressure. After Rublee the aggregation of elements conceived by the patentees would have been equally obvious. It follows that the claim is invalid for its failure to meet the test of § 103. Graham v. John Deere Co., supra.

The claim must fall also because of its failure to meet the requirements of § 101; the electrolytic cell therein defined does not qualify as a patentable invention. The cell comprises nothing more than an aggregation of known elements in a combination in which these elements perform no functions or operations substantially different from those theretofore performed in similar combinations of the prior art. Such combinations do not meet the rigid test of patentability. Great Atlantic & Pacific Tea Co. v. Supermarket Equipment Corp., 340 U.S. 147, 71 S.Ct. 127, 95 L.Ed. 162 (1950); Cuno Engineering Corp. v. Automatic Devices Corp., 314 U.S. 84, 62 S.Ct. 37, 86 L.Ed. 58 (1941); Lincoln Engineering Co. of Illinois v. Stewart-Warner Corp., 303 U.S. 545, 58 S.Ct. 662, 82 L.Ed. 1008 (1938).

That part of the judgment which held claims 1, 3 and 4 of '927, and claims 2, 5, 6 and 9 of '058 invalid, will be affirmed. That part of the judgment which held claim 2 of '927 valid will be reversed. The case will be remanded to the District Court for disposition not inconsistent with this opinion.

KALODNER, Circuit Judge (dissenting).

I would affirm the judgment of the District Court in these appeals at Nos. 15195 and 15196 for the reasons so well stated by Judge Lane in his opinion reported at 231 F.Supp. 609 (D.C.N.J. 1964).