## ALLEGHENY DROP FORGE COMPANY

### v.

### PORTEC INC., Appellant.

### No. 76–1059.

United States Court of Appeals, Third Circuit.

Argued June 7, 1976.

Decided Aug. 13, 1976.

---

Henry N. Paul, Jr., Wallace D. Newcomb, Paul & Paul, Philadelphia, Pa., for appellant.

Stanley J. Price, Jr., John L. Spiegel, Plowman & Spiegel, Pittsburgh, Pa., for appellee.

Before SEITZ, Chief Judge, and ALDISERT and GARTH, Circuit Judges.

## OPINION OF THE COURT

PER CURIAM.

Allegheny Drop Forge Company brought an action against Portec, Inc.[1] to declare invalid United States Patent Nos. 3,100,080 (Railway Rail Joint) and 3,139,364 (Method of Making Railway Track) held by Portec as licensee from Rene A. Fiechter, the patentee. Both patents involve the joining of railroad rails by use of epoxy resins. Allegheny moved for summary judgment on several grounds, arguing primarily that, given the state of the pre-existing art, the patents were invalid as "obvious" under 35 U.S.C. § 103.

In granting Allegheny's motion for summary judgment, the district court reviewed several pre-existing United States and foreign patents, including a West German patent (No. 1,705,115), all of which involved the joining of metals and rails by use of epoxy resins.[2] The district court analyzed both the Fiechter and the West German patents, the latter of which had predated the Fiechter patents by eight to nine years, but had not been considered by the United States Patent Office during the proceedings which led to the issuance of the Fiechter patents.[3]

On analysis, the district court found the Fiechter (Portec) patents and the West German patent to be essentially identical and accordingly held the Fiechter patents invalid. The district court's reasoning is reflected in the following portions of its opinion:

> Having thus delineated the scope of Fiechter's claimed inventions, we turn to examination of the prior art to ascertain whether they are "new" or whether they merely represent ordinary mechanical developments which would be "obvious" to an artisan of ordinary skill in the pertinent art. We bear in mind that "in legal contemplation, one of ordinary skill in the art is chargeable with comprehensive knowledge of it." *Contl. Can Co. v. Crown Cork & Seal Co.*, 415 F.2d 601, 603 (3d Cir.1969).
>
> Can it be established by plaintiff, from the evidence of record in the case at bar,

---

1. Portec's counterclaims alleging Allegheny's infringement of the patents were dismissed by the district court in the order granting summary judgment to Allegheny.

2. The full opinion of the district court is found at 370 F.Supp. 673 (W.D.Pa.1974).

3. The district court recognized that the existence of relevant prior art not considered by the Patent Office materially weakens the importance of the presumption of patentability derived from 35 U.S.C. § 282. *Scripto, Inc. v. Ferber Corporation*, 267 F.2d 308 (3d Cir. 1959).

that the patents relied on by defendant teach "nothing of significance that has not already been disclosed"? 415 F.2d at 602. Can it be shown that Fiechter's "advance over the prior art, if any, required only the exercise of the skill of the art"? *Detrola Corp. v. Hazeltine Corp.,* 313 U.S. 259, 269, 61 S.Ct. 948, 952, 85 L.Ed. 1319 (1941). Our analysis discloses that these questions must be answered in the affirmative.

\* \* \* \* \* \*

West German Gebrauchsmuster [9] No.

[9] Literally "use-model", this type of patent protection is called by defendant a "petty or design patent" . . . . Perhaps "utility model", a phrase appearing in 35 U.S.C. 184, is the most appropriate expression. Whatever its nature, it is of public record in the German patent office and serves to charge practitioners of what defendant calls the "railroad track, including rail joint, art" . . . with notice of what it discloses. This would be particularly true since the German applicant was an operating railroad system and the invention was made "in the course of service" . . . . This was no ivory-tower inventor, or airplane manufacturer, but an operating railroad. Nor does this patent refer to toy trains and tracks, as defendant contends . . . .

1,705,115, applied for on December 12, 1954, by the German Railroad System (Deutsche Bundesbahn), issued July 28, 1955, expiring January 1, 1961 (Ex. 4) makes the following claim:

\* \* \* \* \* \*

"Electrically insulating fastening of railroad rails to the railroad ties as well as electrically insulating connection of the railroad rails with each other, identified in this respect, that the rails (1) or the thereto fastened underlying plates (2) are firmly glued together by means of a known adhesive for metal (5) with the ties (3), especially steel and concrete ties, as well as the rails directly with each other or also additionally with strengthening fish-plates (4) lying along both rail-ends." (Footnote omitted)

The description of the advantages of this German invention emphasizes the reduction of maintenance costs, due to the absence of bolt-holes which would weaken the strength of the rails. Electrical insulation (necessary in connection with signals) is also emphasized. But defendant's patents likewise cover insulated joints. The insulation is afforded by the insulating properties of the adhesive itself. Defendant's method also permits non-insulated joints, when desired, by assuring metallic contact between the rails, rather than complete separation by adhesive material. This difference is not material, as the conductive properties of steel have long been known.

It is very clear that this invention and defendant's are essentially identical. Defendant's is stated in more verbose language, partly in response to criticisms from patent office examiners, but in substance both have the same features: fastening of rails together, or of rails with tie plates, or fish-plates, by means of glue.

This German patent was not considered by the United States Patent Office during proceedings which led to issuance of defendant's patents. Fiechter knew of the German patent no later than July 21, 1960 (Ex. 34). Whether Fiechter was or was not under any duty to bring this prior art to the attention of the United States his patents involved in the case at bar is immaterial in the present connection. But it is clear that the German invention of 1954 antedates Fiechter's claim of conception in July, 1955 . . . .

Likewise the Neuweiler Swiss patent No. 236,552 of June 16, 1945, (Ex. 6) covers fastening rails to ties by means of adhesive. It does not cover joining the rails to each other by adhesive. The same inventor's Swiss patent No. 247,641 of December 1, 1947 (Ex. 10) is a method patent of the same scope.

The same inventor's Swiss patent No. 259,372 of September 16, 1949 (Ex. 8), covers electrically insulated rail joints. It teaches the insertion of a layer of laminated insulating material, fastened together by adhesive (specifically mentioning Araldite, defendant's preferred bonding agent), along the fish-plates and

between the butt ends of the rails. It should be noted, however, that this patent is primarily directed toward achievement of electrical non-conductivity, rather than the mechanical union of the rails with each other and with the ties. In fact it contemplates use of the customary bolts and screws, although insulating them by a cylindrical tube of insulating material. Moreover, the insulating sheets do not appear to be fastened by adhesive to the fish plates; and separate sheets are used for each rail end, with a space between them. The adhesive is therefore not intended as a bonding agent to replace bolts as a means of connecting the rails and fish plates together. Fiechter's method patent, however, permits "eliminating . . . bolts" and can produce joints which are either insulated or conducting, as may be desired.

\* \* \* \* \* \*

370 F.Supp. at 680–82.

■ While we agree with the district court's analysis which we have reprinted, we think that the district court erred in a portion of its opinion which stated that a new use for a known product is unpatentable as a matter of law. 370 F.Supp. at 683. A new use for an old process or product is patentable if the new use or application is itself not "obvious" to one skilled in the art. 35 U.S.C. § 100(b); *B & M Corp. v. Koolvent Aluminum Awning Corporation of Ind.,* 257 F.2d 264, 267 (7th Cir. 1958). *See also,* P. J. Federico, *Commentary on the New Patent Act,* 35 U.S.C. prec. § 1 at 15–16.

■■ While in this one respect the district court misstated the law of obviousness under 35 U.S.C. § 103, we can nevertheless affirm its order on an alternative ground, if we are satisfied that the judgment is correct. *PAAC v. Rizzo,* 502 F.2d 306, 308 n. 1 (3d Cir.), *cert. denied,* 419 U.S. 1108, 95

S.Ct. 780, 42 L.Ed.2d 804 (1975). Having reviewed the record and the district court analysis of the two Fiechter patents in terms of the existing prior art, we agree that both of the patents were obvious to those skilled in the art. *See Graham v. John Deere Co.,* 383 U.S. 1, 17, 86 S.Ct. 684, 15 L.Ed.2d 545 (1966) (patent validity is a question of law); *see also Sakraida v. Ag Pro, Inc.,* 425 U.S. 273, 96 S.Ct. 1532, 47 L.Ed.2d 784 (1976); *Dann v. Johnston,* 425 U.S. 219, 96 S.Ct. 1393, 47 L.Ed.2d 692 (1976). The orders of March 28, 1974 and November 26, 1975 from which Portec appealed, will be affirmed.[4]

---

4. Portec sought rehearing of the March 28, 1974 order which granted summary judgment in favor of Allegheny declaring defendants' patents invalid and dismissing Portec's counterclaims. The district court denied rehearing in its order dated June 24, 1974. Through inadvertence, that order was not made known to Portec. This Court in a non published *per curiam* opinion, No. 75–1077 (September 16, 1975), thereupon directed that the order denying rehearing be vacated, and a new order entered from which Portec could timely appeal. In compliance with that direction, the district court entered its order of November 26, 1975.