**L. D. SCHREIBER CHEESE CO., INC., Plaintiff,**

**v.**

**CLEARFIELD CHEESE CO., INC., Defendant.**

**Civ. A. No. 77–1032.**

United States District Court, W. D. Pennsylvania.

May 20, 1982.

On Motion for Attorney's Fees June 24, 1982.

Dickie, McCamey & Chilcote, Pittsburgh, Pa., for plaintiff.

Reed, Smith, Shaw & McClay, Pittsburgh, Pa., for defendant.

## OPINION

WEBER, Chief Judge.

This is an action for patent infringement under 35 U.S.C. § 271 and § 281. Jurisdiction of the subject matter is conferred on this court by 28 U.S.C. § 1338. Venue is proper under 28 U.S.C. § 1400(b). After trial of this matter to the court and submission of exhibits and depositions, the parties have stipulated to decision by this court on the record as it now stands.

## I. FACTS

Plaintiff L. D. Schreiber Cheese Co., Inc. (Schreiber) is the owner of United States Patent No. 4,046,923 (Meng Patent) by assignment from the inventors. Schreiber contends that defendant Clearfield Cheese Co., Inc. (Clearfield) has infringed and is still infringing the claims of the Meng Patent by certain products and processes. Schreiber seeks damages for past infringement and an injunction against further infringement by Clearfield. Defendant by its Answer denies any acts of infringement and asserts that the Meng Patent is invalid for lack of novelty, 35 U.S.C. § 102, for obviousness, § 103, and for double patenting.

Plaintiff's business is the manufacture of cheese and cheese products. The cheese industry has faced a persistent problem in the separation of cheese slices in great measures intensified by the great growth of the fast-food cheeseburger industry.[1] Due to their component ingredients, moisture content, and other characteristics, cheese slices have a tendency to adhere to each other and inhibit manual separation. The industry has tried to solve this separation problem, with some measure of success, by improvements in the ingredients mix, moisture and heat control, and the use of oils and coatings.

The problem, however, has never disappeared and the cheese industry still wrestles with separation. Alternate offset stacking, which presents an extended, grippable edge to assist manual separation, had been attempted previously to the Meng invention with the difficulty that the extended edges, being pliable, tended to sag out of the plane of the slice. This is the problem which the Meng Patent addresses.

The Meng Patent discloses an alternate offset arrangement of cheese slices in a stack overwrapped to form a package, and the production process to produce that stack. The date of invention is April 1, 1970, and the patent was issued on September 6, 1977. Claim 1 describes a package containing individual product slices formed of "a flexible plastic material, such as cheese", in which the lateral edges of alternate slices are aligned in offset relation to adjacent slices. This alternating offset provides a "gripping portion" extending outwardly relative to adjacent slices which the patent specifies must be "sufficient to facilitate manual separation of the slices, but insufficient to allow the gripping portions to sag out of the plane of the major portion

---

1. [Warning to reader: (in small type)].

While we speak herein of "cheese" and "slices", these terms may be misleading. We are not speaking of "cheese" in the evocative sense of Cheddar, Edam, Gouda, Emmental, Gruyere, Parmesan, Roquefort, Gorgonzola and American Brick, which are hard cheeses which can be sliced. We do not deal with "soft" cheeses like Camenbert, Brie, and Limburger, which are not amenable to slicing.

The material dealt with here is technically called "processed cheese" or "cheese product" to which a great deal has been done; additives added, agents to enhance cohesion added, and other elements to reduce adhesion added, the final concoction poured on a hot surface and rolled to a uniform thickness, then passed to a cooling surface to be hardened for cutting into ribbons of uniform width, and finally lopped off in uniform lengths. It is this process which produces flat individual sheets of uniform thickness, length and width, which are given the name "slices" in this proceeding.

of the slice." Claims 2–4 define the effective amount of offset as being greater than ⅛″ but less than ⁵⁄₁₆″. The remainder of the claims describe the production line process and guide members used to produce the alternating offset relation. Figure 5 of the Meng Patent illustrates the claimed package and demonstrates the offset element.

Plaintiff's application for a patent on the described package and process was initially denied by the Patent Examiner on the basis of the Beck Patent alone, which discloses the packaging of food slices in a plastic pouch, and in conjunction with the Palmer patent which discloses the conventional ribbon line production process. The Beck patent includes an illustration depicting slightly offset slices, but makes no claim for offsetting nor specifies any dimension of offset.

Schreiber filed with the Patent Office the affidavit of Beck, the co-patentee of the Beck patent. Beck asserted ignorance of any package in the art such as Schreiber's, containing uniform slices in uniform offset. Beck also stated that although he was familiar with the Beck patent, and as a person skilled in the art, he had not conceived the offset principle taught by the Meng patent.

Schreiber also submitted the affidavit of Robert G. Bush to the Patent Office. Bush, a Schreiber employee, described Schreiber's previous use of temporary offset stacks in its "shingle stack" production line. Beginning in 1966, Schreiber produced a shingle stack package consisting of slices of 3 varieties of cheese. These slices were stacked in a stairstep arrangement, each slice offset in relation to the underlying slice. In production of this shingle stack, line employees manually removed slices from temporary stacks to re-stack in the stairstep arrangement. To facilitate this manual disassembly Schreiber produced a temporary stack with cheese slices alternately offset a uniform amount. Bush states that this offset was ½″ and sagged considerably. These temporary stacks are depicted in photo exhibits accompanying the Bush affidavit.

The Patent Examiner considered the Beck and Bush affidavits but denied plaintiff's application on the basis of the disclosures of the Beck and Palmer patents. The Patent Office Board of Appeals affirmed.

The Court of Customs and Patent Appeals (CCPA) reversed the decision of the Board of Appeals in *Application of Meng*, 492 F.2d 843 (CCPA 1974). The court identified the claimed offset as the only distinguishing feature and held that neither the Beck nor the Palmer patent disclosed or suggested the offset step. The court also found the assertions of the Beck and Bush affidavits to be persuasive evidence of the non-obviousness of the specified offset. On the basis of this distinguishing element, the CCPA found the invention to be non-obvious and the claims patentable. *Id.*, at 849.

Schreiber immediately filed this suit charging Clearfield with infringement of the newly acquired patent. Schreiber specifically charges that Clearfield's activities at its Curwensville, Pa. and Clinton, Mo. plants constitute infringement.

Clearfield employs a Palmer-type ribbon line production at both of the above-named facilities with modifications to achieve alternate offset of the ribbons in the stack. The ribbons are sliced into individual stacks which are then overwrapped to form defendant's "Easy Deal" packages. Although the degree of offset varies and is not strictly limited to the claimed effective range of offset of the Meng patent, the Easy Deal packages do include offset dimensions within that range and Clearfield's offset arrangement is designed to facilitate manual separation.

In support of its defense of patent invalidity under 35 U.S.C. § 103, Clearfield has brought before this court several patents and prior practices in the cheese industry for consideration as prior art and as evidence of ordinary skill. This evidence was not before the CCPA and therefore not considered by it in rendering its decision in this matter.

The Jerome patent, U. S. Patent No. 573,599 discloses a package of uniform rectangular sheets of toilet paper. Adjacent sheets are offset with alternate offset edges aligned "so as to be distinguishable and accessible to the finger of the user." This principle is illustrated by Figure 2 of the Jerome patent.

*Fig. 2*

While the offsetting of sheets is intended for ease in separation and handling, it is the inside edge, lying on the face of the adjacent sheet which is intended to be gripped by the user.

British Patent No. 793,347 published in 1958, discloses the vertical stacking of slices of various flexible synthetic materials of uniform size in an alternative offset arrangement. The apparatus described is to operate with some materials having adhesion problems. The "pieces are alternatively arranged with opposite edges protruding", with the purpose of facilitating the removal of each piece from the stack. The patent does not specify any particular dimension of offset, nor is the stack overwrapped to form a package. The offset stacking arrangement is depicted in Figure 2 of the patent.

**FIG. 2**

Clearfield has also offered evidence of alternately offset slices in cheese stacks produced by Kraft, Inc. Beginning in 1965, Kraft produced stacks of cheese slices with alternate slices offset as a stage of their production. Kraft's still photographs and a film clip of this process depict a uniform degree of offset within the dimensions claimed in the Meng patent. These stacks were not overwrapped as packages but were manually dismantled for feeding onto a plant production line. The consuming public is not aware of this stage of production which Kraft has kept confidential. The slices were offset to facilitate manual separation of slices. In practice, the degree of offset did vary from the specifications but this was acceptable as long as a grippable edge was exposed.

Also in evidence and under Protective Order are Kraft design drawings depicting cheese slice stacks with uniform alternate offsets. (Defendant's Exhibits 40, 41). Testimony of Kraft employees establishes that these stacks, first produced in 1970 or 1971, were overwrapped to form a package and sold to fast food customers who had demanded stacks allowing for quick, easy separation. These stacks, sold under the name "Stak Pak" or "Stagger Stak Pack", were Kraft's answer to the separation problem. The concept was conceived contemporaneously with the Meng invention of April 1, 1970.

Additional evidence, elicited by plaintiff from its own employees, elaborates on Schreiber's own prior practices in the "shingle stack" production line. In an affidavit to the Patent Office, Bush stated that the temporary offset stacks had employed a uniform offset of ½″ which sagged considerably. This sagging, it is argued, discouraged further use of offset for separation until the Meng invention. However it is evident from the affidavits of Cornell and six other employees that these temporary stacks were produced with slices "overlapped and stacked with the outside lateral edges of alternate [slices] displaced by an amount from about ⅛″ to ½″, such that the lateral edges of every other [slice] were aligned in general vertical registration with each other." (Plaintiff's Exhibits 6–12, p. 10). At least some stacks then were pro-

duced prior to the Meng invention with offsets within the dimensions claimed by the Meng patent. This evidence was not before the Patent Office or the CCPA.

## II. STATUTORY PRESUMPTION

■ Schreiber asserts the presumption of validity accorded an issued patent. 35 U.S.C. § 282 (1970); *Trio Process Corp. v. L. Goldstein's Sons, Inc.*, 461 F.2d 66, 70 (3d Cir. 1972). The burden of proving invalidity in the face of the presumption is a heavy one and can only be satisfied by clear and convincing proof. *Id.*

■ In the instant case, defendant Clearfield has placed before this court prior art not examined by the Patent Office. Such prior art, if relevant, greatly weakens the presumption of validity. *Allegheny Drop Forge Co. v. Portec, Inc.*, 541 F.2d 383, 384, n. 3 (3d Cir. 1976); *Black & Decker Manufacturing Co. v. Disston, Inc.*, 436 F.Supp. 1175, 1179 (W.D.Pa.1977). Plaintiff contends however that the presumption remains substantially intact where the new prior art is not as relevant as that examined by the Patent Office. *Otto v. Koppers Co.*, 246 F.2d 789 (4th Cir. 1957); *cert. denied*, 355 U.S. 939, 78 S.Ct. 427, 2 L.Ed.2d 420 (1953).

■ The new prior art submitted by defendant for our consideration is clearly relevant here. The point of novelty of the claimed invention, as identified by the Court of Customs and Patent Appeals (CCPA) in its opinion in this matter, *Application of Meng*, 497 F.2d 843 (1974), is the existence of offset in the stacking to aid in separation, in dimensions which inhibit sag. As will be fully developed below, the newly submitted prior art goes to the point of novelty. The Jerome and British patents and the new evidence of Schreiber's production line stacks disclose offsetting of slices in a stack to facilitate separation, the application of the offset principle to cheese slices, and the use of dimensions claimed effective in preventing sag by the Meng patent. This information disclosed by the prior art was not available to the CCPA and will operate to weaken the presumption of validity attending the patent in suit.

## III. FINDINGS

■ Clearfield challenges the validity of plaintiff's patent on the basis of obviousness. 35 U.S.C. § 103.[2] Under this section a patent is invalid if the difference between the claimed invention and the prior art would have been obvious to a person having ordinary skill in the art at the time of the invention. *Jenn-Aire Corp. v. Penn Ventilator Co.*, 464 F.2d 48 (3d Cir. 1972); *Trio Process Corp. v. L. Goldstein's Sons, Inc.*, 461 F.2d 66 (3d Cir.) *cert. denied*, 409 U.S. 997, 93 S.Ct. 319, 34 L.Ed.2d 262 (1972).

■ Although obviousness is ultimately a question of law, it is premised on the resolution of three basic factual inquiries; the scope and content of the prior art, the differences between the prior art and the claims at issue, and the level of ordinary skill in the art. *Graham v. John Deere Co.*, 383 U.S. 1, 86 S.Ct. 684, 15 L.Ed.2d 545 (1966); *Northern Engineering & Plastics Corp. v. Eddy*, 652 F.2d 333 (3d Cir. 1981).

### A. PRIOR ART

■ Our initial inquiry then is of the scope and content of the prior art. Pertinent prior art has been defined as that which one of ordinary skill in the art would reasonably be expected to look to for a solution to the problem which the patented article solves. *Tokyo Shibaura Electric Co. Ltd. v. Zenith Radio Corp.*, 404 F.Supp. 547, 566 (D.Del.1975), *aff'd*, 548 F.2d 88 (3d Cir. 1977); *Burgess Cellulose Co. v. Wood Flong Corp.*, 431 F.2d 505, 508 (2d Cir. 1970).

■ The prior art is not to be narrowly confined to the methods and inventions of

2. "Conditions for patentability; non-obvious subject matter.

A patent may not be obtained though the invention is not identically disclosed or described as set forth in section 102 of this title, if the differences between the subject matter sought to be patented and the prior art are such that the subject matter as a whole would have been obvious at the time the invention was made to a person having ordinary skill in the art to which said subject matter pertains. Patentability shall not be negatived by the manner in which the invention was made."

the subject art, but extends to other analogous arts. *Graham*, 383 U.S. 1, 19, 86 S.Ct. 684, 694, 15 L.Ed.2d 545; *Application of Wood*, 599 F.2d 1032 (CCPA 1979). Prior art extends beyond the subject art to arts with similar elements, problems and purposes. *Skega Aktiebolag v. B. F. Goodrich Co.*, 420 F.2d 1358 (6th Cir. 1970); *Bontrager v. Steury Corp.*, 457 F.Supp. 526, 536 (N.D.Ind.1978), *aff'd*, 624 F.2d 1103 (7th Cir. 1979). While many cases illustrate this principle, we cite here some salient examples. *Graham*, 383 U.S. 1, 86 S.Ct. 684, 15 L.Ed.2d 545 (prior art not limited to insecticide containers or sprayer caps, but extends to solutions of mechanical closure problems); *I. U. Technology Corp. v. Research-Cottrell, Inc.*, 641 F.2d 298 (5th Cir. 1981) (art of cement chemistry is pertinent prior art to field of scrubber sludge waste disposal where problem is stabilizing waste in cementitious composition); *Geo. J. Meyer Manufacturing Co. v. San Marino Electronic Corp.*, 422 F.2d 1285 (9th Cir. 1970), (art of missile detection systems is prior art for device in bottle manufacturing art used to detect foreign particles in glass); *Skega Aktiebolag v. B. F. Goodrich Co.*, 420 F.2d 1358 (6th Cir. 1970) (art of securing rubber tires to metal rims is prior art for a patented rotary ball mill used for grinding ore, where the common problem is clamping rubber to metal); *Bontrager v. Steury Corp.*, 457 F.Supp. 526 (N.D.Ind.1978); *aff'd* 624 F.2d 1103 (7th Cir. 1979) (prior art for patent on lift system on collapsible trailer is broader than vehicles and extends to lift systems and jacks generally); *see also* cases collected in 23 A.L.R. Fed. 326, 376. It is also true that the more remote prior art is from the context of the subject matter, the less persuasive it becomes on the question of obviousness. *Frank W. Egan & Co. v. Modern Plastic Machinery Corp.*, 387 F.2d 319 (3d Cir. 1967); *Colourpictures Publishers, Inc. v. Mike Roberts Color Productions, Inc.*, 394 F.2d 431 (1st Cir.) *cert. denied*, 393 U.S. 848, 89 S.Ct. 134, 21 L.Ed.2d 118 (1968).

In the instant case we must consider as relevant prior art those areas where a person ordinarily skilled in the cheese arts could reasonably be expected to look for solutions to similar problems. Schreiber argues that the prior art should be limited to the cheese industry, or at its most inclusive, the sliced food manufacturing and packaging industry. This court does not take such a narrow view of the prior art. The separation and sag problems encountered in cheese stacking are not unique to food slices. Separation is a problem with many articles of uniform size and shape. Sag is an inherent troublesome characteristic of all flexible materials. It is their nature. It is true that cheese may have distinctive properties distinguishing it from other materials, but the similarities may well outweigh the differences. In any case that determination can only be made after examining the patent or process for possible improvements or solutions to the cheese problem. The common properties of flexible slices and the similar problems encountered in their separation and stacking make the art of stacking flexible materials a reasonable area of inquiry for a person of ordinary skill in the cheese art.

In fact, plaintiff's claims are not restricted to cheese or food slices, but rather extend to "flexible plastic material, such as cheese." It is significant that Kraft researchers in the cheese industry during the time period in question looked to many varied patents for possible solutions to the cheese separation problem, including those for stacking or separating tar shingle roofing, brick materials, and building materials as well as bacon and other food products. In short Kraft searched "anything . . . applicable for easy separation on whatever product there was." (Warwick Deposition, pp. 35, 50–54). Kraft even experimented with a cheese roll inspired by a roll of toilet paper, in an attempt to solve its separation problems. (Warwick, 50–51). This is indicative of the fact that persons of ordinary skill in the cheese art at the time of the Meng invention would look to non-food items for solutions to the very problem which the Meng invention sought to solve. Therefore the prior art in this situation includes relevant patents for the stacking and separation of flexible non-food items.

Both the Jerome and British patents, advanced by the defendant and not before the

Patent Office or the CCPA, teach the stacking of flexible materials for the purpose of aiding separation. Because both patents involve the critical elements of flexible slices and a method of stacking those slices to solve separation problems, they are analagous to Schreiber's situation in the cheese arts and will constitute pertinent prior art in a determination of obviousness.

Plaintiff argues that the specific classifications searched by the Patent Examiner are evidence of the scope of the prior art, and that since the examiner did not find the Jerome and British patents in the classifications searched, they are not included in the prior art. While we agree that classifications searched by the Examiner may give some indication of what arts may be relevant, they are not determinative. *Manufacturers Systems, Inc. v. ADM Industries, Inc.*, 198 U.S.P.Q. (B.N.A.) 223 (N.D.Ind.1978), *aff'd*, 615 F.2d 741 (7th Cir. 1979). We are bound to apply the objective standard of what is reasonable to expect of a person of ordinary skill in the art, and that standard is not to be circumscribed by the Examiner's judgment of the content of Patent Office classifications. *Id.* On the issue of prior art, the fact that the Patent Examiner did not uncover the Jerome and British patents in his search is outweighed by the evidence that persons of ordinary skill in the cheese arts had sought answers to the problem in the stacking of other non-food items. The classifications searched by the Examiner are thus neither conclusive nor persuasive evidence of the limits of the prior art.

Plaintiff also contends that the Jerome and British patents are not within the prior art because unlike the Meng patent they do not teach an overwrapped package. We find this argument unconvincing. The common lesson taught by the Jerome, British, and Meng patents is an efficient method of stacking flexible materials to aid in separation. The addition of a wrapping does not significantly alter the fundamental problem or its solution. It would be unreasonable to direct one with a stacking problem only to those stacks enclosed in a package, while withholding from him the lessons of all unwrapped stacks. Similarly, a reasonable person ordinarily skilled in the cheese arts cannot be presumed to forego inquiries in search of a solution to this problem on the basis of such an irrelevant factor as the absence of a wrapping. Indeed, the evidence, previously discussed is contrary. The criteria for research was "anything . . . applicable for easy separation," and had no apparent limitation to overwrapped product stacks. (Warwick Deposition, p. 54).

Defendant contends that plaintiff is estopped from denying the inclusion of the Jerome and British patents in the prior art because plaintiff submitted other patents, not limited to food slices, for consideration by the Patent Office as prior art. Clearfield relies on *Manufacturer's Systems, Inc. v. ADM Industries, Inc.*, 198 U.S.P.Q. (B.N.A.) 223 (N.D.Ind.1978), *aff'd*, 615 F.2d 741 (7th Cir. 1979). Because we have decided on other grounds that the Jerome and British patents are to be included in the prior art, it is not necessary to decide the issue of estoppel.

Clearfield also advances as prior art the Kraft production line stacks which first appeared in 1965. These stacks were produced at a Kraft plant for use on a production line there. The stacks were disassembled by line employees in the production process for feeding of individual slices onto a belt, and so the slices in these temporary stacks were offset to facilitate manual separation. The significance of this Kraft stack is the early design and use of uniform alternate offsetting within the dimensions specified by the Meng patent at a time pre-dating the Meng invention.

Defendant seeks to establish the Kraft process as prior art under 35 U.S.C. § 102(a) and (g),[3] for use as evidence of

---

**3.** "Conditions for patentability; novelty and loss of right to patent.

A person shall be entitled to a patent unless—

(a) the invention was known or used by others in this country, or patented or described in a printed publication in this or a foreign country, before the invention thereof by the applicant for patent, or

obviousness and lack of novelty. To qualify as prior art under these sections, the use must be both public and prior to the invention of the patent in suit. *Jones Knitting Corp. v. Morgan*, 361 F.2d 451 (3d Cir. 1966); *Gillman v. Stern*, 114 F.2d 28 (2d Cir. 1940). Plaintiff seeks to defeat the use of the Kraft offset stack as prior art on the ground that it was secret and actively concealed by Kraft.

The burden of proof in establishing the public nature of the prior use is on the infringer; *Jones Knitting*, 361 F.2d at 455. That burden is heavy, requiring evidence strong enough to remove all reasonable doubt. *Id.* This heavy burden is imposed where the presumptive validity of the patent in issue retains its full vigor. *Id.; Radio Corporation of America v. Radio Engineering Laboratories, Inc.*, 293 U.S. 1, 7, 54 S.Ct. 752, 755, 78 L.Ed. 1453 (1934). Because the presumption of validity in this case has been greatly weakened, the burden on defendant will be only that of proving public knowledge of the prior use by a preponderance of the evidence. On the record in this case, defendant is unable to meet even the lightened burden on this issue.

If a private use is kept secret by its inventor, it cannot be a public use. *Gillman v. Stern; Ostby & Barton Co. v. Jungersen*, 65 F.Supp. 652 (D.N.J.1946), *aff'd per curiam*, 163 F.2d 312 (3d Cir.), *modified*, 335 U.S. 560, 69 S.Ct. 26, 93 L.Ed. 235 (1947). But not all attempts at secrecy render a prior use secret. *Del Mar Engineering Laboratories v. United States*, 524 F.2d 1178 (Ct.Cl.1975) (classified documents); *Monolith Portland Midwest Company v. Kaiser Aluminum & Chemical Corporation*, 267 F.Supp. 726 at 783; *Standard Automatic Machine Co. v. Karl Kiefer Machine Co.*, 18 F.2d 326 (S.D.N.Y.1925), *aff'd per curiam*, 18 F.2d 331 (2d Cir. 1927).

It is clear from the deposition of Fred L. Jordan, a Kraft employee at the time of the use of the temporary offset stacks, that security for this particular production line was tight. The production area in which the offset stack was used was restricted to visitors and designated confidential. Non-Kraft employees, with the necessary exception of government inspectors, had no access to this confidential area. Mr. Jordan testified that packaging experts might view this production line, but they were required to sign a secrecy agreement. There is no evidence that the film excerpt or photographs were ever viewed by other than Kraft personnel, and indeed there is no evidence that these particular items were viewed by anyone. (Jordan Deposition pp. 39–49). Defendant was unable to produce any evidence indicating any public disclosure of Kraft's offset stacks to persons outside of Kraft. The Kraft offset stacks are therefore part of a secret prior use and do not constitute prior art for any purposes.

Nevertheless it is undisputed that the prior use of temporary stacks of alternate offset slices in Schreiber's own shingle stack production line constitutes prior art. Although these stacks were temporary and not overwrapped to form a package, they do evidence a previous use of claimed offsets to facilitate manual separation.

## B. DIFFERENCES

After defining the prior art it is necessary to identify and evaluate the differences between the prior art and the claims at issue. *Graham*, 383 U.S. 1, 86 S.Ct. 684, 15 L.Ed.2d 545.

The Jerome patent specifically teaches a stack of toilet paper held together by a clip to form a package. While toilet paper is a flexible material, it does not have the adhesion problem that cheese does. Although the offset is intended to facilitate manual separation, it is the inner edge of the slice lying on the face of the underlying slice

---

* * * * * *

(g) before the applicant's invention thereof the invention was made in this country by another who had not abandoned, suppressed, or concealed it. In determining priority of invention there shall be considered not only the respective dates of conception and reduction to practice of the invention, but also the reasonable diligence of one who was first to conceive and last to reduce to practice, from a time prior to conception by the other."

which is intended to be gripped. No mention is made of sag and no effort is made to control it with specified dimension of offset. Reduced then to its simplest, the Jerome patent discloses for the cheese arts the offsetting of slices. No evidence of offsetting by design was before the CCPA. *Application of Meng*, 492 F.2d 843, 847 (1974).

The British patent involves the stacking of sheets of various flexible synthetic materials including paper, cardboard, plastics, regenerated cellulose, and others, some of which present an adhesion problem. Plaintiff makes much of the fact that the British patent contemplates a horizontal stack of product slices, in which each slice stands on one edge. Plaintiff protests that to duplicate the British stack in cheese slices would result in deformed cheese slices as their own weight causes them to change shape. For a prior art teaching to be useful it·is not necessary that one duplicate it faithfully. The British patent does disclose a uniform, alternating offset of flexible slices for the purpose of facilitating separation of each slice from the stack. The need for the simple mechanical adjustment from a horizontal stack to the vertical stack does not detract from the significant disclosures of the British patent. However, the British patent makes no provision for a specified amount of offset and it does not consider sag. As discussed previously, the absence of a wrapper is of no import.

Schreiber's own prior practice in its shingle stack line is significant. It demonstrates the application of the offset principle, taught by the Jerome and British patents, to the cheese industry for the express purpose of facilitating manual separation. It is also significant that the offset employed covered a range including the dimensions specified by the Meng patent which are effective to prevent the sagging of slices. The only significant difference between this instance of prior art and the Meng patent is that the production line stacks were not refined and restricted to exclude sag-inducing dimensions. Rather

they covered a wider range of offsets, both those efficient to prevent sagging, and those causing it. It is this refinement which Schreiber asks this court to find patentable.

## C. LEVEL OF ORDINARY SKILL.

The level of ordinary skill in the art is indicated by evidence showing the technical competence and experience of skilled artisans working in the area and by the manner in which problems were solved. *Fischer & Porter Co. v. Haskett*, 354 F.Supp. 464 (E.D.Pa.1973). The CCPA, on the basis of the Beck and Bush affidavits, concluded that the level of skill in the cheese art was not so advanced as to arrive at the Meng invention as an obvious step. *Application of Meng*, 492 F.2d 843. That court did not, however, have the advantage of the evidence of ordinary skill placed before us by both parties.

We have already noted that persons in the cheese art had looked to stacking and separation techniques of many varied products for possible solutions to the similar problems facing the cheese industry. (Warwick Deposition, pp. 50–59). The scope of research was wide and resulted in many varied and useful advances in the cheese art. The development of interleaving, individual wrappers, special coatings and improvements in product composition are a few examples. Interest in a practical solution to this problem was high and continues today. The persons employed to develop improvements were well-educated and experienced.

Schreiber's employees demonstrated the requisite skill to develop alternate offset stacking within the effective range claimed by Meng by the use of the principles in the company's shingle stack production line. Kraft researchers were also possessed of the skill to create uniform alternate offsets facilitating separation but inhibiting sag, as evidenced by their employment of the principle in their production line stacks and the "Stagger Stak Pak" packages.[4] The latter

---

4. A prior use, while not prior art because secret, can supply probative evidence of what the general level of skill in the art was at the time of the invention. *Del Mar Engineering Laboratories v. United States*, 524 F.2d 1178, 1182–3 (Ct.Cl.1975).

also establishes the existence of the skill to overwrap the offset stack for commercial sale. (Defendant's Exhibits 40–41).

Thus the facts of record, reviewed here, reveal a relatively advanced level of skill in this art.

### D. OBVIOUSNESS

 Having resolved the factual issues we now employ them in determination of the legal issue of obviousness. Once again, the requisite test of invalidity is whether a person having ordinary skill in the art at the time of the invention would have found the difference between the claimed invention and the prior art to be obvious. 35 U.S.C. § 103; *Jenn-Aire Corp. v. Penn Ventilator Co.*, 464 F.2d 48 (3d Cir. 1972).

 The difference sought to be patented is the refinement of the offset principle to a dimension range which did not result in the sag of the extended portions of the slices. We conclude on the facts of record and the findings of this court that this invention is obvious and unpatentable.

 In determining if a person of ordinary skill in the art would have found this advance to be obvious, the court must assume that that person had knowledge of all prior art disclosed at the time of the invention, regardless of whether anyone actually had such knowledge. *Aluminum Company of America v. Amerola Products Corp.*, 552 F.2d 1020 (3d Cir. 1977); *Layne-New York Co., Inc. v. Allied Asphalt Co., Inc.*, 501 F.2d 405 (3d Cir. 1974), *cert. denied*, 421 U.S. 914, 95 S.Ct. 1572, 43 L.Ed.2d 780 (1975). The hypothetical person of ordinary skill must thus be viewed as having before him knowledge of the Jerome and British patents, and the Schreiber production line offset stacks. The failure of particular individuals to perceive the advance is not preclusive evidence of the non-obviousness of the patent. *Tokyo Shibaura Electric Co., Ltd. v. Zenith Radio Corp.*, 548 F.2d 88 (3d Cir. 1977).

The offsetting of slices to facilitate separation had been disclosed by the Jerome and British patents. Indeed this offset principle had already been applied to the cheese arts by Schreiber in their shingle stack line, well

before the development of the Meng invention. This prior use had also employed offsets within the dimensions specified by the Meng patent as efficient for preventing sag.

 The mere adjustment of features to achieve optimum results is not patentable. *Northern Engineering*, 652 F.2d 333. Nor will a "change in form, proportions or degree" support patentability. *E.g., Pullman Inc. v. ACF Industries, Inc.*, 393 F.2d 83, 89 (2d Cir. 1968) (quoting *Smith v. Nichols*, 88 U.S. 112, 22 L.Ed. 566 (1874)); *Chemical Construction Corp. v. Jones & Laughlin Steel Corp.*, 311 F.2d 367 (3d Cir. 1962); *American Infra-Red Radiant Co. v. Lambert Industries, Inc.*, 360 F.2d 977, 987 (8th Cir.) *cert. denied*, 385 U.S. 920, 87 S.Ct. 233, 17 L.Ed.2d 144 (1966).

The case of *Chemical Construction* is analogous to the situation presented by the present litigation. The plaintiff there defended the validity of a patent on the method and apparatus for removing particulate matter from industrial gases on the basis that it embodied the novel concept that the gas stream be accelerated to a higher velocity than that of the intersecting washing liquid stream. Previous patents had described the acceleration of the gas stream, but had not specified its relation to the velocity of the washing liquid. Plaintiff's method was admittedly more efficient. The court then found, in determining obviousness, that "the ascertainment of the optimum range of velocity, by the application of mathematical formulae ... required nothing more than routine experimentation, a course plainly indicated by the prior art." *Id.*, at 373.

The same situation is present in the case before us. The Jerome and British patents as prior art had taught the use of offset as an aid to separation. Schreiber's prior use had applied the principle to cheese slices. The only novel element claimed by the Meng patent is the restriction of offset to optimum dimensions.

The discovery of optimum dimensions would have been obvious to a person of ordinary skill in the cheese art at the time

of the Meng invention. Schreiber had already demonstrated its ability to employ the efficient range of offsets. Employees of Kraft also had the knowledge and experience to produce alternate offset slices in stacks with uniform offsets within the efficient range claimed by the Meng patent. It would take no more than experimentation and mechanical skill of the type rejected by *Chemical Construction* for a person of the relatively advanced level of ordinary skill in the art to eliminate the inefficient offset dimensions. These refinements and adjustments, embodied in the Meng patent, are therefore obvious and unpatentable and the patent invalid under 35 U.S.C. § 103.

 Plaintiff protests that the claimed invention is a package and not merely the temporary stack of offset slices disclosed by the prior art. In our view, the addition of a wrapper adds nothing to patentability in this situation. Discovery of a new use for an old product does not sustain patentability. *Layne-New York Co., Inc. v. Allied Asphalt Co., Inc.*, 501 F.2d 405 (3d Cir. 1974), *cert. denied*, 421 U.S. 914, 95 S.Ct. 1572, 43 L.Ed.2d 780 (1975); *Gould-National Batteries Inc. v. Gulton Industries, Inc.*, 361 F.2d 912 (3d Cir. 1966). Nor is the use of an overwrap to form a package non-obvious. *Allegheny Drop Forge Co. v. Portec, Inc.*, 541 F.2d 383 (3d Cir. 1976). Kraft had designed and sold packages of alternate offset cheese slices shortly before the Meng invention, indicating that the packaging of offset stacks for commercial sale was an obvious step to a person of ordinary skill in the art.[5] The fact that prior art involved temporary production line stacks while the Meng patent claims a package is therefore irrelevant on the issue of patentability.

 Schreiber contends that secondary considerations, present in the instant case, such as commercial success, long felt but unresolved need and the failure of others are persuasive evidence of non-obviousness. While secondary considerations may give some indication of non-obviousness, *Graham*, 383 U.S. 1, 86 S.Ct. 684, 15 L.Ed.2d

545; *Rains v. Cascade Industries, Inc.*, 402 F.2d 241 (3d Cir. 1968), they cannot alone establish the validity of the patent. *United States Expansion Bolt Co. v. Jordan Industries, Inc.*, 488 F.2d 566 (3d Cir. 1973); *Continental Can Co. v. Crown Cork & Seal Co.*, 415 F.2d 601 (3d Cir. 1969) *cert. denied*, 397 U.S. 914, 90 S.Ct. 916, 25 L.Ed.2d 94 (1970). We have considered the evidence submitted by Schreiber and have concluded that the offset principle has met with commercial success and that it has filled at least partly a need of the cheese industry. However, these facts do not outweigh the clear evidence of obviousness discussed previously.

Nor does the fact that others have taken licenses from Schreiber establish the non-obviousness of the invention, because other producers may find the cost of a license cheaper than the expense of litigation. *Philips Electronic & Pharmaceutical Industries, Inc.*, 450 F.2d 1164 (3d Cir. 1971); but see, *Columbia Broadcasting System v. Sylvania Electrical Products, Inc.*, 415 F.2d 719 (1st Cir. 1969), *cert. denied* 396 U.S. 1061, 90 S.Ct. 755, 24 L.Ed.2d 755 (1970).

Clearfield has clearly demonstrated the obviousness of the Meng patent. Therefore we hold the patent in suit invalid for obviousness under 35 U.S.C. § 103 and will enter judgment for the defendant. Pursuant to Fed.R.Civ.P. 52(a), the findings of fact and conclusions of law are embodied in the foregoing Opinion.

Because of this disposition, the court does not address at this time Clearfield's defenses of invalidity for double patenting, invalidity for indefiniteness and noninfringement.

## MEMORANDUM ORDER

### On Motion for Attorney's Fees

This five year old patent infringement action was characterized by the production of great quantities of pleadings, briefs, exhibits, trial, post trial briefs and arguments, and finally a decision of this court entered

---

**5.** Evidence of independent contemporaneous development, while not conclusive, is highly persuasive of the obviousness of the invention.

*Clarke v. K-Mart*, 481 F.Supp. 470 (W.D.Pa. 1979), *aff'd.* 639 F.2d 772 (3d Cir. 1980).

May 20, 1982 finding the claimed patent invalid for obviousness. The plaintiff has now filed motions for amendment of the findings of fact, conclusions of law and judgment. Our review of the grounds for the motion for amendment of the findings and judgment, and the response of the defendant thereto, convince us that plaintiff really requests a lengthy reconsideration by the plaintiff of the findings which are contrary to its assertion in this case and which the court had a full opportunity to review and consider prior to the entry of its judgment. We believe that the findings are fully supported by substantial evidence of record before the court and the conclusions are well supported by law. We find no reason to pursue this matter by further arguments on briefs, rearguing matters that were fully presented to the court during the process of the case. The court finds no further reason for delay and accordingly plaintiff's motion for reconsideration and amendment is denied.

The defendant has also filed a motion to amend and supplement the judgment and to award attorney fees under 35 U.S.C. § 285. The only aspect in which the defendant moves to amend the judgment is its request to award reasonable attorney fees to it as the prevailing party. Defendant argues that the patentee has proceeded in a clear disregard for the truth in obtaining issuance of the patent by selectively disclosing certain factual information to the Patent Office while withholding other crucial information. Considering the defendant's allegations and the plaintiff's response to this motion we do not find this case to be "exceptional" under the terms of the section of the patent law providing for the award of reasonable attorney's fees to the prevailing party under 35 U.S.C. § 285. We did not recognize a situation where plaintiff had committed a fraud on the Patent Office nor such conduct that exhibited an exceptional disregard for the truth in presenting its claims. The award of such fees to the prevailing party is a matter of discretion with the trial court and we are not persuaded that the plaintiff's conduct amounts to a situation compelling the granting of such award.

ORDER

AND NOW this 24th day of June, 1982, plaintiff's motion for amendment of findings of fact, conclusions of law, and judgment is HEREBY DENIED, and defendant's motion to amend and supplement the judgment to award attorney's fees IS DENIED.